ELLEN HOGARTH *vs.* POCASSET MANUFACTURING COMPANY.

Bristol.   October 27, 1896. — January 5, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Negligence — Law and Fact — Pleading — Trial.*

In an action for personal injuries occasioned to the plaintiff, while employed in the defendant's mill, by falling into a hole caused by opening a trap door in an alleyway over which the plaintiff passed many times daily in wheeling a box of bobbins, and which was opened several times during the day for the purpose of giving access to a shaft underneath, if the plaintiff testifies that he did not

know of the trap door, he is entitled to go to the jury upon the question whether he should have been warned of the danger.

The declaration in an action at common law alleged that the defendant negligently maintained in the floor of the room where the plaintiff worked a certain trap and opening of which he was ignorant; and that, while walking along the floor in the course of his employment, he fell into the hole caused by opening the trap door and was injured. It appeared at the trial that the trap door was opened several times daily to give access to a shaft underneath for the purpose of oiling it; and the plaintiff, who testified that he did not know of the trap door, conceded that there was no defect in the ways, works, or machinery. *Held,* that it must be assumed that the case went to the jury on the question whether there was negligence in regard to the hole at the moment of the accident, and that the judge rightly supposed that to be the issue to be tried. *Held, also,* that the judge rightly refused to rule that, in the absence of evidence showing a better way of oiling the shaft, "it was not negligence on the part of the defendant to maintain the trap door as it was at the time of the accident."

Tort, at common law, for personal injuries sustained by the plaintiff while in the defendant's employ as a slubber tender. The declaration alleged that the defendant negligently maintained in the floor of the room where the plaintiff worked a certain trap and opening, of which she was ignorant; and that, while the plaintiff was in the exercise of due care, and walking along the floor in the course of her employment, she fell into the hole caused by opening the trap door and was injured. Trial in the Superior Court, before *Maynard,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff, for certain purposes connected with her work, had occasion to pass through an alleyway in the defendant's mill in Fall River. This alleyway was in the basement of the mill, and in a corner farthest from the windows, and was formed by the wall of the room on one side and by a machine called a slubber on the other side. The slubber was about five feet high, and for its whole length along the alley, at the height of about a yard, had revolving machinery near the line of the alley. In this alleyway was the opening in the floor through which the plaintiff fell.

The trap door connected with the opening was nearly as wide as the alley, and had long hinges, which projected a little above the floor. It was lifted by an iron ring two inches in diameter, which was fastened by a staple near the outside edge. When opened, the trap door rested up against the wall of the mill, and was held there by a hook, and the hole in the floor was left en-

tirely unguarded.   It was about ten or twelve inches in width, and three and a half feet long, and two and a half feet deep. The alley was two feet and eight inches wide.   At the bottom of the hole was a revolving shaft, and the trap door was intended to give access to this shaft for the purpose of oiling it.   This duty was performed by a workman named Shay, an employee of the defendant.

Shay testified that it was his duty to go down into the hole to oil this shaft four or five times a day, and that he did so; that one of these times was between four and five o'clock in the afternoon; that no other person had a right to open this door; and that the hole was so small that he had to leave the trap door up while he was in there oiling the bearing.   Shay was a tall man, large and heavy.   The machinery, trap door, hole, and bearing had remained in the same condition for five or six years prior to the accident complained of, and Shay had during that time performed the same duty in the same way.   Shay also testified that he neither saw, heard, nor felt the plaintiff while he was down in the hole.

David H. Dyer testified, on behalf of the defendant, that he was a mechanical engineer; that his business was the construction of mills and the placing of machinery therein; that he had constructed about thirty new mills and fixed many old ones; that the sole object of the trap door in question was to furnish access to one of the principal bearings of the defendant's mill for the purpose of oiling the bearing; that it was necessary to oil bearings, and there was no other way of oiling this one than by such a trap door as this; that it would not have been possible to avoid having this trap door where it was, except by re-organizing the whole machinery scheme of the mill; that the trap door itself was in good condition and good repair; and that it was proper and necessary as the mill was organized.

On cross-examination, he testified that such a trap door existed in no other mill in Fall River, so far as he knew, and that he was acquainted with nearly all the mills in the city.

One Moffatt, the boss carpenter in the defendant's mill, testified that this was the only hole under a trap door in that mill.

The plaintiff testified that she was not a regular employee of the mill, but at the time of the accident had worked there about

two or three weeks in place of an employee who was absent; that she was a slubber tender, and her slubber was in line with the slubber above mentioned as forming one side of the alleyway in question, but upon the opposite side of the room; that part of her work was to doff the slubber, which consisted in removing the full bobbins from the slubber and putting on empty ones; that, when the bobbins on the plaintiff's slubber were nearly full, it was her duty to pass through the alleyway and wheel in a box which contained empty bobbins; that this box was three and one half by two feet in size and ran on four small wheels; that she removed the empty bobbins from the box, placed the full bobbins from the slubber in it, put the empty bobbins on the slubber, and then wheeled the box with the full bobbins into another room, passing through the alleyway; that she was a married woman about thirty-five years of age, was an experienced slubber tender, and had worked in other mills off and on for about twenty-one years; that she was thus walking along the alley at about half past four o'clock in the afternoon, when she fell into the above mentioned hole, and injured her foot by striking against something therein; that she then went back and sat down on a window seat, and saw Shay coming out of the hole, but that she did not see or feel him in the hole; that as she was walking along the alley prior to the accident she was paying attention to the revolving machinery on the adjoining slubber in order to avoid getting caught; that she did not know the trap door and hole were there, or that Shay was in the hole, or that he ever went into it; and that there was no artificial light there.

On cross-examination, the plaintiff testified that she spent most of her time in that alley; that while she was in the alley she was sometimes fixing bad work or going to get her bobbins; and that she had to go to get her bobbins about twelve times a day.

Annie Hurley, who worked on the slubber next to the plaintiff's, testified that, when this trap door was open, she had stood in the alley in front of the plaintiff's slubber, and had no difficulty in seeing the trap door; that, some time prior to the day of the plaintiff's accident, the witness, in passing along the alley, had fallen into this same hole when the trap door was open, and

Shay was in the hole oiling the machinery, and had landed on his back; that she knew about the hole; and that she happened to fall into it because there was a row going on in the mill tower, and she was running out to see it.

The defendant duly requested the judge to rule that there was no evidence of any defect in the ways, works, or machinery of the defendant which entitled the plaintiff to recover. The counsel for the plaintiff said they did not claim that there was any such defect, and the request was thereupon withdrawn.

At the close of the evidence the defendant requested the judge to rule as follows:

"1. On the whole evidence the plaintiff cannot recover. 2. In the absence of evidence showing a better and safer way of oiling this bearing, it was not negligence on the part of the defendant to maintain the trap door as it was at the time of the accident."

The judge refused so to rule; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in October, 1896, and afterwards was submitted on briefs to all the judges.

*A. J. Jennings & J. M. Morton, Jr.,* for the defendant.

*J. W. Cummings,* (*E. Higginson* with him,) for the plaintiff.

HOLMES, J. This case is not unlike *Young* v. *Miller, ante,* 224, in its facts, except that here the plaintiff testified that she did not know of the trap door. Her testimony is hard to believe, no doubt, as she passed over the door many times a day, and as the wheels of her bobbin box probably jolted as they went over its hinges, but we cannot say that she must have known of it. She may have been unusually absent-minded. Again, it does not follow from the fact that she took the risk of dangers permanently incident to the visible permanent structure. (*Gleason* v. *New York & New England Railroad,* 159 Mass. 68,) that she must be assumed actually to have known of every detail of the structure, and therefore to have known of the trap door and the possibility of its being open once in a while. Thus it will be seen that the case is stronger than *Young* v. *Miller,* and notwithstanding the decision in that case, which was very near the line, a majority of the court are of opinion that a jury might

have found the plaintiff entitled to be warned to look out for the opening of the doors. On the evidence, the plaintiff was entitled to go to the jury, and the judge was right in refusing to rule the other way.

It is argued for the defendant, that the request had reference to the declaration, and that the declaration only charges an improper structure. Possibly, if attention had been called to it, that would have been the interpretation, but if it had been read so narrowly, and anything had been understood to depend on it, probably the plaintiff would have amended. Although the verb used is "maintained," the object is "trap and opening," and undoubtedly the plaintiff meant to charge the defendant with negligently keeping the opening at the moment of the accident. The plaintiff had conceded that there was no defect in the ways, works, or machinery. As the action was at common law, this fairly would have been understood by the judge to mean that there was no permanent defect in the structure. We must assume that the case was tried and went to the jury on the question whether there was negligence in regard to the hole at the moment of the accident, and that the judge was warranted in supposing that to be the issue which the parties meant to try. If the defendant intended to cut off that issue by reason of the form of the declaration, it should have called attention to it.

From what we have said it will be seen how we must deal with the second request. No doubt it was capable of an interpretation like the stricter interpretation of the count. But so interpreted the proposition was admitted, and the refusal of the judge must have been based on the obvious possibility that it might be understood to mean more. In view of the plaintiff's admission, it probably would have been taken to mean that there was no negligence on the defendant's part at the moment of the accident in having no signal of danger or protection at the trap, even as towards persons who did not know that the trap door was there. That was a question for the jury.

*Exceptions overruled.*