WILLIAM O. FALARDEAU *vs.* D. BLAKELEY HOAR & another.

Suffolk.   March 30, 1906. — June 19, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Negligence.*

If a person has passed many times through a corridor of a building and in doing so has walked over a trap door four feet square which can be lifted out by a ring, never having seen it open and not knowing it was there, and if in the performance of his duty and walking in the usual way he again passes along the same corridor by daylight at a time when the trap door has been taken off and the opening is left without barriers or anything else except the opening itself to indicate that the floor is not in its usual safe condition, and walks into the opening and is injured, in an action against the persons in control of the building for his injuries the question of his due care is for the jury.

If those in control of a building maintain a trap door in one of its corridors set in an opening in the floor four feet square and lifted out by a ring, the opening being used only about twice a week, it is their duty to furnish suitable barriers, or objects which may be used as such, so that their servants when they have occasion to remove the trap door can guard or warn persons passing along the corridor without knowledge of the opening, and, in an action against them by a person injured from walking into the opening, a failure to provide for the use of such barriers is evidence of their negligence.

In an action against those in control of a building by one temporarily in their employ who was injured by falling into an opening in the floor of one of the corridors of the building from which a trap door had been removed by an assistant janitor without guarding the opening by any barrier, if it has been found that the defendants had made no provision for a barricade or warning, it is no defence that it was the practice of the janitor and the assistant janitor when the trap door was taken off to place a ladder or settee or other object across the corridor, that such articles were kept in a room near by, and that the accident was caused by the negligence of the assistant janitor, a fellow servant of the plaintiff, in omitting this customary precaution, unless it also is shown that such precautions were taken with the knowledge and approval of the defendants.

TORT, against the trustees of the Boston Art Students' Association in control * of a building called the Grundmann Studios on Clarendon Street in Boston, for personal injuries from falling through an open trap door in the floor of a corridor of that building. Writ dated January 12, 1903.

In the Superior Court the case was tried before *White*, J. The jury took a view of the premises. The plaintiff testified as follows:

" I am a gilder, painter and decorator, and reside at Neponset. I am forty-nine years old. The accident happened on September 7, 1899. On the day before the accident, I had been calcimining on the second floor of the Grundmann Studios in the corridor at the entrance numbered 194. I was engaged by Wildes, was paid probably twenty-five cents per hour and did not furnish my own materials. On the morning of the accident I entered the building at entrance No. 194, and immediately went up the stairs to see how the calcimining looked. As I turned to go down stairs, I met Wildes coming up stairs. Wildes was the janitor who had employed me. He was also engineer in the building. He looked after the rooms, waited on the artists who had studios there, and occasionally painted and swept. He may have calcimined with me the day before but I think not. King helped with the ladder. Wildes told me to give the calcimine another coat. I left Wildes at the head of the stairs, and went down stairs to get some paint. Turning into the other corridor, I met King. King was an assistant to the janitor, who worked about the building, cleaning and sweeping, and doing odd jobs. I remember taking five or six steps

---

* See *Falardeau* v. *Boston Art Students' Association,* 182 Mass. 405.

after I passed King, and that is the last thing I remember until I came to myself in the hospital. I do not recall falling at all. King was about three feet away from the corridor in which the stairway is. I was walking in the ordinary way, and not running, and my eyesight was perfectly good."

The plaintiff, besides giving other testimony, further testified as follows: "I have worked at Copley Hall [in the same building] ten times, more or less, generally as watchman, sometimes four or five weeks at a time. I had probably passed over the spot where the trap door is fifty times, more or less, but had never seen the trap door, and did not know that it was there. It is about four feet by four feet with a lifting ring on it. The day of the accident was a fair one ; the door faces toward the east or northeast, and the time was about eight o'clock in the morning." The trap door was used twice a week for raising and lowering ashes, and rarely for anything else.

Other material evidence is described in the opinion.

At the close of the evidence the defendants asked the judge to rule that on all the evidence the plaintiff could not recover. The judge refused to give this ruling. At the request of the defendants he ruled that Wildes and King were fellow servants of the plaintiff.

The defendants further asked the judge to give the following instruction to the jury : "If a trap door in a corridor is used from time to time, and the owners or persons in control of the corridor have supplied materials near at hand which are suitable to be used as barricades, and when the hole is opened from time to time these barricades are customarily used, then the failure to use them in a particular instance on the part of a servant using the hole, is not negligence which is imputable to the employers in favor of another fellow servant who falls into the hole because the barricades were not used." The judge refused to give this instruction as requested, but instead modified the instruction by giving it in the language quoted in the opinion.

The defendants excepted to the refusal to give the instruction requested and to the charge as given in so far as it stated that knowledge on the part of the owners or persons in control was a requisite.

The jury returned a verdict for the plaintiff in the sum of $1,000; and the defendants alleged exceptions.

*E. F. McClennen,* (*H. F. Lyman* with him,) for the defendants.

*C. E. Washburn,* for the plaintiff.

KNOWLTON, C. J.    The plaintiff, while temporarily employed in a building held and managed by the defendants as lessees, fell through a trap door in the floor of one of the corridors, and was injured.    This trap door was set in an opening in the floor, and could be lifted out of the opening by a ring.    There was much contradiction between the defendants' witnesses and the plaintiff in regard to some of the material facts in the case; but as the jury presumably believed the plaintiff, we must consider the exceptions in the aspect of the testimony which is most favorable to him.

He testified that he had often passed through this corridor but never had noticed the trap door.    We cannot say as matter of law that his failure to notice it shows a lack of due care. *Johnson* v. *Field-Thurber Co.* 171 Mass. 481.    According to his account of the accident, he was passing through the corridor in the performance of his duty, walking in the usual way, when he met King, an assistant of the janitor, and went on a little further, after which he remembered nothing more until he found himself in the hospital.    The evidence showed that King had taken out the trap door to put some ash cans into the cellar, leaving an opening in the floor four feet square, through which the plaintiff fell.    There was nothing there but the opening to indicate that the floor was not in its usual safe condition. There was testimony from a medical expert that a person receiving a severe blow on the head as the plaintiff did, ordinarily loses the recollection of everything occurring immediately before the blow.    We are of opinion that it was a question for the jury whether the plaintiff, walking there in an ordinary way in the performance of his duty, was in the exercise of due care, even though he failed to notice an opening in the floor in a corridor where he had always found the floor in perfect condition, and where he had reason to believe that it was absolutely safe.    *Thyng* v. *Fitchburg Railroad,* 156 Mass. 13.    *Maguire* v. *Fitchburg Railroad,* 146 Mass. 379.    If, in looking forward, the corridor seemed in its usual condition, we cannot say as matter

of law that he was bound so to scrutinize the floor as to be sure that there was no opening in it. The danger that one might step into such an opening without noticing it was recognized by the janitor, who testified as follows : " I had always put a step ladder or settee there as a protection when I opened the trap door. I did not give King any instructions to do this on the morning of the accident, and I did not look to see whether it had been done, because he had always put something there, and of course I supposed he knew enough to do it that time."

The defendants contend that there was no evidence of negligence on their part. It was their duty, in a general way, to have the building in a safe condition for those who were working in it. An opening in the floor of a corridor rendered it unsafe for those who had occasion to pass through the corridor without knowledge of the opening. Such an opening was in the nature of a trap for those who were ignorant of it, and it was the duty of the defendants to give warning of it. This opening would be made only at intervals by the defendants' servants for the performance of particular duties. If the defendants provided proper barriers or other means of protection for those walking there, which were to be used by their servants whenever the door was lifted up, the use of these barriers might be entrusted to servants in connection with their work which involved the opening of the trap door. *Moynihan* v. *Hills Co.* 146 Mass. 586. At the time of this accident no barriers were used and no warning was given. From these facts, unexplained, the jury might infer negligence on the part of the defendants. *Griffin* v. *Boston & Albany Railroad,* 148 Mass. 143. *Savage* v. *Marlborough Street Railway,* 186 Mass. 203. *Feital* v. *Middlesex Railroad,* 109 Mass. 398. By way of explanation the defendants offered evidence that when the door was opened it was the custom to barricade the opening by putting across it " a ladder or settee or anything that would go across there," and that such articles were kept in a room near by. The judge left to the jury the question whether the defendants had made provision for a barricade, by an instruction in these words : " Now this is a question for you. If there were barriers provided, and if from the custom there of using those barriers the defendants in the line of their supervision

knew that those were being used for barriers, and that Wildes [the janitor] and King were using them as barriers, why, then they had done all that the law required of them, and the act would become the negligent act of a fellow workman, namely King, in the failure to use those things which were provided as barriers and which the defendants in the line of their supervision knew were being used for that purpose." This instruction was correct. The defendants requested a similar instruction, which omitted in its hypothetical statement the element of intention on the part of the owners or persons in control of the building that the articles which were suitable for making a barricade should be used for that purpose, and the element of knowledge that they were so used, and they excepted to the refusal to give the instruction, and to the instruction given so far as it included knowledge on the part of the owners as a requisite.

This exception must be overruled. If the defendants had made no provision for a barricade or warning, and had no knowledge that ladders or settees were used as barriers, and these things were sometimes so used without their knowledge, they would not be relieved from liability for an accident at a time when they were not used, and when they had made no provision for erecting a barrier or giving a warning.

The jury must have found that the defendants made no proper provision for giving warning.

Some evidence that the testimony of Wildes and King should not be given the effect imputed to it by the defendants is found in the fact that the defendants, while seemingly stating in their answers to interrogatories the facts relied upon by them as a defence, did not refer to any provision of this kind.

*Exceptions overruled.*