THOMAS W. LETCHWORTH *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.     March 4, 1915. — April 1, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Employer's liability, Railroad, Invited person, Walk on drawbridge
in railroad yard, Assumption of risk. *Practice, Civil,* Exceptions. *Pleading,
Civil,* Answer. *Evidence.*

At the trial of an action against a railroad company by one of its locomotive engi-
neers to recover for personal injuries received when at eleven o'clock at night
the plaintiff, in walking to the defendant's passenger station from the engine
house to take a train to his home at the close of his work and in crossing a draw-
bridge over a river in the defendant's yard, fell through the bridge because of
the lack of a plank walk that ordinarily was there, if there is evidence that the

bridge consisted of trusses on which rails were laid, that plank walks had been laid along some of the tracks on the drawbridge which had been maintained for years by the defendant for the use of its employees and were the only means furnished for passing on the defendant's premises from one side to the other of the river, that the walk that the plaintiff was attempting to use was the usual and ordinary way travelled both day and night by engineers and firemen leaving the engine house to take trains to their homes at the passenger station, that the plaintiff had seen other engineers so use it and his superior officer walk upon it and never had been forbidden to use it, a finding is warranted that he was using the walk by an implied invitation of the defendant.

Under the foregoing circumstances, further evidence tending to show that the defendant in repairing the bridge had taken up the walk and had not replaced it and had given no warning of its absence by signal, notice or otherwise, warrants a finding of negligence on the part of the defendant whether or not it is found that, when injured, the plaintiff's employment for the time had ceased.

And where it further appears that to get to the station by the only other route would have resulted in the loss of over an hour's time for the plaintiff, that in approaching the bridge he was looking at the signals in the yard to avoid being run into by trains, and that he had no cause to know that the planking of the walk on the bridge was up, a finding that the plaintiff was in the exercise of due care is warranted.

In an action of tort for personal injuries the defendant, in order to rely on the defence that the plaintiff assumed the risk of the injury, must set it up affirmatively in his answer.

In an action of tort for personal injuries, it cannot be ruled as a matter of law that the plaintiff assumed the risk of the injury, if there is evidence upon which a finding would be warranted that the plaintiff was ignorant of the existence of the risk.

*It was said* in this case that an exception to the charge of the judge to the jury "so far as is inconsistent with the rulings requested" by the excepting party well might be dismissed as too indefinite. The charge in this case was unobjectionable.

An exception to a statement by a medical expert for the plaintiff at the trial of an action of tort for personal injuries, that one of his assistants had applied a certain physical test to the plaintiff, will not be sustained, although the evidence was immaterial, if later in the trial the defendant introduced the result of the test, because the defendant was not harmed by the error.

TORT for personal injuries received by the plaintiff, a locomotive engineer employed by the defendant, as he was leaving his work on his way home and was crossing a drawbridge, as stated in the opinion. Writ dated April 24, 1912.

In the Superior Court the case was tried before *Stevens*, J.

The case was submitted to the jury upon the first and third counts of the declaration, both of which were at common law, the first count alleging that the plaintiff was an employee of the defendant and received his injury because of negligence of the

defendant in failing to furnish safe and proper approaches and ways to be used by the plaintiff during his work, and the third count alleging merely that the plaintiff, while rightfully and lawfully upon premises of the defendant, was injured by reason of a negligently unsafe condition of the premises.

There was evidence in behalf of the defendant on the question of damages that blindness, from which the plaintiff was suffering and which the plaintiff's evidence tended to show was due to his injuries, was due to atrophy of the nerves of the eyes which had begun months before the time that the injuries complained of were received and was not due to injuries, but was the result of syphilis; and that the "Wasserman test," so called, is a test commonly made to detect the germs of syphilis. Dr. Frank C. Richardson, a medical expert and specialist in nerve diseases, testifying for the plaintiff, stated that he had examined the condition of the plaintiff's eyes as to vision and had found that his vision was wholly lost and that in his opinion the plaintiff was suffering from blindness due to primary atrophy. He also testified in direct examination subject to exceptions by the defendant that one of his assistants had applied the Wasserman test to the plaintiff, and that the test was reported to him. There was no evidence that Dr. Richardson was present at the time the test was made.

Later in the trial as a part of the evidence of the defendant the record of the hospital giving the result of this Wasserman test was offered by the defendant and was read to the jury. The test of the blood showed a negative reaction and the spinal fluid a positive reaction.

Other material evidence is described in the bill of exceptions.

At the close of the evidence the defendant asked for rulings that the evidence did not justify a verdict for the plaintiff on either of the counts submitted to the jury, and for the following rulings:

"3. There is not sufficient evidence to justify a finding that the plaintiff was using this way on the invitation of the defendant.

"4. There is not sufficient evidence to justify a finding that the defendant was negligent.

"5. If the jury find that the relation of master and servant existed at the time of the accident they should return a verdict for the defendant.

"6. The evidence of the employment of the plaintiff on the day of the accident and at the time of the accident does not justify a verdict for the plaintiff.

"7. If the jury find by the evidence of the plaintiff that he was an employee of the defendant at the time of the accident he cannot recover.

"8. If the plaintiff is found to be still in the employment of the defendant at the time of the accident he had assumed the risk of the footbridge not being in place and he cannot recover.

"9. There is no evidence that the footbridges over No. 1 draw were constructed for any purpose other than to make this particular part of the railroad yard convenient to a degree approximating to the convenience of the rest of the railroad yard for the business of the defendant, and no invitation to employees can be implied to use this bridge on their way to or from their work when their work is begun and finished at the East Cambridge roundhouse."

The rulings were refused. There was a verdict for the plaintiff in the sum of $17,050; and the defendant alleged exceptions.

*F. N. Wier,* (*J. M. O'Donoghue* with him,) for the defendant.

*W. I. Badger,* (*C. M. Pratt* with him,) for the plaintiff.

DE COURCY, J. The plaintiff was a locomotive engineer in the employ of the defendant. At about eleven o'clock, P. M., on April 24, 1911, after putting up his engine at the round house in East Cambridge, he proceeded to walk to the North Station, over the location of the railroad, to take a train for his home. He reached the drawbridge over the Charles River, maintained by the defendant as a part of its location, and was in the act of stepping to where there always had been a plank walk across the bridge, when he found the planking gone. Unable to save himself from falling he went through the open work of the bridge into the river.

1. There was evidence for the jury of an implied invitation to the plaintiff to use this plank walk or so called foot bridge. The drawbridge consisted of trusses on which the rails were laid. The remaining portion of the bridge was open, except where plank walks, eighteen inches to two feet in width, were placed along by tracks 2, 4 and 6. These foot bridges had been maintained for years by the defendant for the use of its employees, and were the only means furnished for passing from one side of the river to the

other on the defendant's premises. They necessarily were used by many of the employees in the course of their daily work. There was evidence that this foot bridge at No. 6 track, where the plaintiff was injured, was the usual and ordinary way travelled both day and night by engineers and firemen in going from the engine house to the North Station, when they wanted to take a train; that the plaintiff had seen other engineers ordinarily avail themselves of it in going to and from their work; that he had seen his superior officers walk upon it, and that he never had been told not to use it. *Hanlon* v. *Thompson,* 167 Mass. 190. *Boyle* v. *Columbian Fireproofing Co.* 182 Mass. 93. *Feneff* v. *Boston & Maine Railroad,* 196 Mass. 575, 577. *Donovan's Case,* 217 Mass. 76.

2. The defendant concedes that there was evidence from which the jury could find that the plank walk along by track No. 6 was not in place at the time when the plaintiff was injured. It seems that the defendant recently had taken it up while replacing the wooden trusses of the bridge with steel ones. No warning of the removal of this foot bridge was given to the plaintiff by signal, notice or otherwise. In view of the frequent use of this way by employees, by night as well as by day, plainly this failure to warn could be found to be negligent. *Gustafsen* v. *Washburn & Moen Manuf. Co.* 153 Mass. 468. *Falardeau* v. *Hoar,* 192 Mass. 263. *Flaherty* v. *New York Central & Hudson River Railroad,* 211 Mass. 570. *Foley* v. *J. R. Whipple Co.* 214 Mass. 499.

3. As to the plaintiff's due care. It could not be said as matter of law that he was careless in choosing to go over the railroad location in order to go home by train rather than wait an hour for a street car by way of East Street. Having decided to go by way of the railroad yard, where trains were likely to pass, and over a dangerous, unfloored drawbridge, in the dark, it was his duty to exercise vigilance commensurate with his surroundings. He testified that in going toward the drawbridge he was looking at the signals, and also in the direction of the station, to see that no train was approaching in either direction; that he stopped and saw that track 6 was clear before he started to cross the drawbridge; and that he had no cause to know that the planks had been removed. The defendant argues with force that his failure to discover the absence of the plank walk before proceeding to

step upon the dangerous drawbridge was so careless as to preclude his recovery. On the whole evidence, however, we think that this was a question of fact for the jury. In the absence of a warning the plaintiff had a right to rely somewhat on the assumption that the foot bridge, which was in constant use, had not been removed. The jury viewed the scene of the accident, and apparently accepted the evidence most favorable to the plaintiff. *Woods* v. *Boston,* 121 Mass. 337. *Urquhart* v. *Smith & Anthony Co.* 192 Mass. 257. *Marston* v. *Reynolds,* 211 Mass. 590.

4. What we have said disposes of all the requests for rulings except the eighth. As to that it is enough to say that the defence of assumption of risk was not set up in the answer. Aside from the matter of pleading, it could not be ruled that the plaintiff assumed the risk of the danger when he was ignorant of its existence. The exception to the charge "so far as is inconsistent with the rulings requested" well might be dismissed as too indefinite; nevertheless the charge was unobjectionable. The testimony of Dr. Richardson, that a Wasserman test had been made by one of his assistants, was immaterial. But as the result of this very test was introduced by the defendant later, no harmful error is shown.

*Exceptions overruled.*