ERASTUS R. SIMPSON *vs.* PHILLIPSDALE PAPER MILL COMPANY.

Suffolk.    March 20, 1917. — June 26, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Negligence,* Employer's liability, Violation of statute. *Evidence,* Competency, Matters of conjecture. *Statute,* Construction. *Words,* "Hoistways."

A paper manufacturing corporation maintained a mill in the State of Rhode Island with a well lighted room three hundred and eighty-seven feet long and about sixty-six feet wide, without partitions, and containing at one side a machine about one hundred and seventy-five feet long and ten feet wide, a travelling crane for the transportation of rolls of paper from one part of the room to another, and, thirty-four feet from one end and somewhat to the side of the centre of the room away from the machine, a hatchway six feet and eight inches in diameter covered, when closed, with a door made from the boards which had been sawed from the floor to make it, with a countersunk ring and with no hinges. Rolls of paper three feet high and from thirty inches to three feet in diameter were discharged from the machine in the ordinary course of manufacturing and were strewn around the floor at the end where the hatchway was and at the side where the machine was. A mechanical engineer of large experience, who had been employed by the corporation for three months, fell into the hatchway when in the course of his duties he was hastening to assist in putting the crane, which needed repairing, in order, and brought an action at common law against his employer for injuries so received, at the trial of which on conflicting evidence the jury might have found that when closed the hatchway was not ordinarily noticeable and that the plaintiff never had seen it open, never had been told of it, and never had noticed it and did not know that it was there, and that he never had known of a trap door in such a place in a factory; that on the occasion of his accident he was picking his way among the rolls of paper to the crane, glancing at the crane carriage from time to time, and, "the next he recalls is that he woke up in bed." The defendant offered evidence tending to show that the open hatchway was guarded by rolls of paper piled around it. *Held,* that the question, whether the plaintiff was in the exercise of due care, was for the jury.

The fact that, at the trial of the action above described, the plaintiff could not

recollect what occurred up to the moment of the accident, where it also appeared that the plaintiff when he fell received a severe blow on the head and there was testimony of a physician that a person receiving such a blow ordinarily loses recollection of everything occurring immediately before the blow, did not make the circumstances of the happening of the accident so much a matter of conjecture as to make the case an improper one for the jury to consider.

There being evidence at the trial of the action above described tending to show that the hatchway was not an obvious condition of the defendant's business, it could not be ruled as a matter of law that the plaintiff assumed the risk of the injury which he received.

Since, on the conflicting evidence at the trial above described, the jury might have found that the hatchway was left open and unguarded, or insufficiently guarded by an improper arrangement of the rolls of paper about it, and that the plaintiff had not been warned of its presence, the question of the defendant's negligence was for the jury.

In the action above described a verdict was ordered for the defendant and the plaintiff alleged exceptions. From the record it did not appear that the point was raised that, as a matter of law, if negligence of any one caused the plaintiff's injury, it was negligence of fellow servants of the plaintiff, so that he could not recover; but it *was stated* that such a ruling could not properly have been given, because the jury might have found that, if the rolls were used as barriers for the hatchway, they were improper materials for the defendant to furnish for that purpose, and that the method of guarding the hole by the rolls was known to the defendant, was adopted by it, and was improper in that it rendered the place more rather than less dangerous.

The hatchway above described, which was used for the purpose of lowering rolls of paper into the basement of the factory, could have been found to have been a hoistway, which, by Gen. Laws of Rhode Island, 1909, c. 129, § 16, should have been protected by sufficient railings, gates or other mechanical devices; and therefore such statute was evidence which was material and admissible to show that, by a violation of the statute, the defendant was negligent.

TORT at common law for personal injuries received while the plaintiff was in the defendant's employ in its paper mill in Phillipsdale in the State of Rhode Island. Writ dated June 22, 1915.

In the Superior Court the case was tried before *Stevens*, J. The material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. E. Hannigan*, (*C. R. Cabot* with him,) for the plaintiff.

*E. C. Stone*, for the defendant.

CROSBY, J. This is an action to recover for personal injuries received by the plaintiff, while in the employ of the defendant, by falling through a trap door or opening in the floor of the defendant's mill at Phillipsdale in the State of Rhode Island.

The plaintiff is a mechanical engineer of large experience.

His principal duties, while in the employ of the defendant, were to superintend and complete certain new construction, and to put and keep the machinery in first class condition to the end that the mill would be operated with the highest degree of efficiency.

The mill was a two story structure, three hundred and eighty-seven feet long and sixty-six feet seven inches wide, consisting of a first floor and basement. The first floor was one room of substantially the above dimensions, with no partitions in it; on the west side was a paper-making machine from one hundred and fifty to one hundred and seventy-five feet long and from eight to ten feet wide; through the centre of the room from north to south was a row of posts ten inches square, from ten to twelve feet apart, extending from the floor to the ceiling. The room was well lighted by large windows on its east and west sides.

A travelling crane was located in the room, with which rolls of paper were carried from one part of the room to another. Most of these rolls were thirty-six inches high and varied from thirty to thirty-six inches in diameter and weighed from four hundred to five hundred pounds. When the manufactured paper comes from the machines, it is wound on the rolls, and after leaving the winder the rolls are strewn around the floor on the west and south sides of the room. A short distance east from the line of centre posts and thirty-four feet from the south end of the room was a hatchway or opening in the floor, six feet and eight inches square. The floor boards had been sawed away to make this opening and those taken out were made into a cover or trap door; they corresponded with the boards in the floor in color and thickness; there was a ring countersunk in the door by which it could be raised, but there were no hinges upon it; the saw cut was from one eighth to one fourth inch in width.

There was evidence that dust that came from felt rolls could get into the saw cut in such a way that it could not be seen. There was also evidence that by reason of trucking across the door the ring could not be seen unless a person looked for it closely.

On the day of the accident the door had been removed and rolls of paper were lowered by the crane to the basement. Whether the door had ever been removed before, while the plaintiff had been in the defendant's employ, was in dispute, and the evidence upon that fact was conflicting. Certain witnesses

testified that rolls of paper had been lowered to the basement through this opening two or three times a week up to the day of the accident, while others testified that the cover had never been removed before that day while the plaintiff was in the defendant's employ.

The plaintiff testified " that there was not any lines or marks of a trap door in the floor that he saw: that he saw nothing that would tell him that there was a trap door there; that he never saw a ring or a hook or anything of that sort in the floor; that there was no difference in the color or in the demarcation of color in that part of the floor; that no one had ever told him there was a trap door there; that he has had a good deal of experience in factories of this sort; that he had never known of a trap door in such a place as that in a factory."

The plaintiff entered the defendant's employ on March 6, 1911. The accident occurred on June 3, 1911. Between these dates he testified that he had been all through the building and had frequently passed through the room where the trap door was located, but did not know it was there until after he was hurt.

On the day of the accident the plaintiff was notified that the crane was out of order. He went up the stairway to the room where it was to direct its repair, which was a part of his work. Two men were working upon it at that time. He testified that he "started to walk from the head of the stairs toward the crane carriage, treading his way, following in between, in and out among the rolls, and glancing at the rolls; that he saw the general lay-out and saw where he could pick a way in between; that his objective was the crane, and he glanced at the crane from time to time; . . . that as he came up that was what he chiefly had in mind, the crane carriage; that as he went along he did not necessarily keep his eyes on the crane, he couldn't separate one from the other; that as he remembers it, he started to walk toward it;" "that the next he knew after he was picking his way among the rolls, the next he recalls is that he woke up in bed. . . ."

The defendant offered evidence to show that at the time of the accident the opening in the floor was guarded properly by the rolls of paper being piled around it. On the other hand there was evidence from which it could have been found that at that time the rolls were scattered around upon the floor as on pre-

vious occasions; that there was no unusual arrangement of them, and that the opening in the floor was not so guarded. There was evidence that near the edge of the opening upon the side from which the plaintiff approached it, there was a space of about eighteen inches between a roll of paper and one of the upright posts through which the plaintiff passed just before he fell.

Upon all the evidence it could not be ruled that the plaintiff was not in the exercise of due care because he had not seen the trap door which he had passed over on previous occasions; he was not guilty of contributory negligence as matter of law because he failed to notice the opening in the floor in time to avoid falling into it.

While the plaintiff could not be found to have been in the exercise of due care, if, without using any precautions to protect himself from harm, he walked into the opening, it is to be noted that as he walked across the floor his intention was directed to the crane; he glanced from time to time to the place where he was walking among the rolls, and also in the direction of the crane, repairs upon which it was his duty to direct. Under these circumstances the question of due care was for the jury.

The defendant contends that, because the plaintiff is unable to recollect what occurred up to the moment of the accident, what happened is a matter of conjecture, but we cannot agree with this contention. The physician who treated him for his injuries testified that a person receiving a severe blow on the head, as the plaintiff did, ordinarily loses the recollection of everything occurring immediately before the blow.

There was evidence that the men working on the crane carriage saw him coming toward them when he was about ten feet from the hole. It is a fair inference from the testimony that he was walking toward the crane when he fell, indeed the defendant does not contend to the contrary. If he failed to show that he was looking upon the floor every step he took so as to be sure that there was no opening in it he was not guilty of contributory negligence as matter of law. *Falardeau* v. *Hoar,* 192 Mass. 263. *Johnson* v. *Field-Thurber Co.* 171 Mass. 481. *Hogarth* v. *Pocasset Manuf. Co.* 167 Mass. 225. *Hannah* v. *Connecticut River Railroad,* 154 Mass. 529.

While the plaintiff assumed all the obvious risks of his employ-

ment, as to which the defendant owed him no duty, still it could not be ruled that for that reason no recovery could be had, as it could have been found that the trap door and the opening thereunder was not so plainly apparent that it ought to have been seen by an ordinarily prudent person, and if so, the risk was not an obvious one. *Falardeau* v. *Hoar, supra.* *McCafferty* v. *Lewando's French Dyeing & Cleansing Co.* 194 Mass. 412, 414. *Johnson* v. *Field-Thurber Co., supra.* *Gustafsen* v. *Washburn & Moen Manuf. Co.* 153 Mass. 468, 474.

The question whether the defendant was negligent was also for the jury. What was said in *Falardeau* v. *Hoar, supra,* is pertinent to the case at bar: "The defendants contend that there was no evidence of negligence on their part. It was their duty in a general way, to have the building in a safe condition for those who were working in it. An opening in the floor of a corridor rendered it unsafe for those who had occasion to pass through the corridor without knowledge of the opening. Such an opening was in the nature of a trap for those who were ignorant of it, and it was the duty of the defendants to give warning of it." While in the cases of *Falardeau* v. *Hoar* and *Hogarth* v. *Pocasset Manuf. Co., supra,* the trap door was in a passageway, still the doctrine of those cases is applicable to the case at bar. The entire floor of the room in the defendant's mill was open and the plaintiff and other employees might be expected to pass over any part of it in the performance of their work. Accordingly it was the duty of the defendant to maintain it in a safe condition for such purposes. *Regan* v. *Boston & Maine Railroad,* 224 Mass. 418. *Perry* v. *Davis & Sargent Lumber Co.* 215 Mass. 338. *Foley* v. *J. R. Whipple Co.* 214 Mass. 499.

The evidence as to whether the hole was protected by the rolls was conflicting and the jury could have found that they were upon the floor as they came from the winder and without arrangement, or it could have been found that, if placed around the opening to guard it, they were placed in such a manner as was inadequate and insufficient to protect persons from injury.

The case at bar is distinguishable from *Young* v. *Miller,* 167 Mass. 224, and *Burnett* v. *Worcester Brewing Corp.* 219 Mass. 91. In those cases the plaintiff knew of the existence of the trap door.

While it does not appear that any claim was made at the

trial that the accident was due to the negligence of fellow servants in carelessly placing the rolls around the opening, it is sufficient to say that it could not have been ruled as matter of law that the plaintiff was barred from recovery upon that ground, as it might have been found that the rolls were not proper materials to use for that purpose. *Ford* v. *Fitchburg Railroad,* 110 Mass. 240, 260. *Kreigh* v. *Westinghouse, Church, Kerr & Co.* 214 U. S. 249, 258.

No contention was made at the trial by the defendant that the rolls were placed around the opening in a negligent manner or differently than the defendant had directed. Its contention was that they constituted a sufficient barrier to properly protect the plaintiff from harm, and that his injuries were due solely to his own negligence. *Healey* v. *Perkins Machine Co.* 216 Mass. 75, 78. *Standard Oil Co.* v. *Brown,* 218 U. S. 78.

If the rolls were placed negligently by fellow servants of the plaintiff for the purpose of guarding the hole, and this was known by the defendant and adopted by it, as the jury could have found, such negligence would be the negligence of the defendant. *Perry* v. *Webster Co.* 216 Mass. 147. *Fitzsimmons* v. *Taunton,* 160 Mass. 223.

If the rolls were placed negligently around the opening and did not serve as a proper barrier, it might have been found that the place was thereby rendered more dangerous than if it had remained open and visible to persons passing in that vicinity.

The presiding judge admitted in evidence Gen. Laws of Rhode Island, 1909, c. 129, § 16, as follows: "All hoistways and elevator openings through floors where there is no shaft shall be protected by sufficient railings, gates, trap doors, or other mechanical devices equivalent thereto, and the same shall be kept closed in the night time or when not in use."

Plainly the opening was not an elevator opening. A "hoistway" is defined as a passageway through or along which something may be hoisted, as an opening in a floor. As there was evidence that the opening could be so used and was used to lower rolls of paper, by means of the crane, into the basement, it could have been found to have been a hoistway. Accordingly the statute was admitted properly upon the question of the defendant's negligence.

*Exceptions sustained.*