HERBERT A. PALMER, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Middlesex.    March 16, 1917. — June 27, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Railroad,* Pass issued to employee, Passenger. *Evidence,* Presumptions and burden of proof. *Contract,* Validity. *Negligence,* Contract to avoid liability, Railroad, Invited person, Causing death.

A pass issued by a railroad corporation to an employee for transportation between his work and his home within the State is presumed to have formed a part of the consideration for which the employee enters and continues in the employ of the corporation.

Such a pass not being a gratuity, the employee while travelling upon the railroad by use of it is entitled to the rights of a passenger, and a provision of the pass to the effect that the corporation shall be exonerated from all liability from negligence of itself, its servants or agents is invalid as against public policy, so that, if the employee is killed, while so travelling after his working hours, by reason of the negligence of an employee of the corporation, the administrator of his estate can maintain an action against the corporation under St. 1906, c. 463, Part I, § 63, as amended by Sts. 1907, c. 392; 1912, c. 354.

St. 1913, c. 784, § 18, as amended by St. 1914, c. 679, § 1, has not changed the law as established by *Doyle* v. *Fitchburg Railroad,* 166 Mass. 492, which was reaffirmed.

Evidence that, when a railroad train stopped at a certain station, gates, which were on the sides of platforms of the cars away from the station and which permitted egress from the cars to a track upon which trains ran in the opposite direction, were left open and that there was a long established custom for passengers to alight on that side of trains at that station, war-

rants a finding of an invitation by the railroad corporation to its passengers so to alight; and, if such is found to be the fact, the corporation owes to its passengers so alighting the duty to refrain from negligence toward them in the running of trains on the adjoining track.

TORT for causing the death of the plaintiff's intestate, Edward Hamilton, under the circumstances stated in the opinion. Writ dated February 25, 1915.

In the Superior Court the action was tried before *Bell,* J. The material evidence is described in the opinion. At the close of the evidence the defendant moved that a verdict be ordered for the defendant on the following grounds:

"1. On the ground that the evidence does not justify a finding of such negligence of the defendant or its agents as would warrant a verdict for the plaintiff.

"2. On the ground that there is not sufficient evidence to justify a finding of a breach of any duty owed the plaintiff's intestate by the defendant or its agents.

"3. Because of the conditions of the pass the defendant is not liable on the evidence.

"4. Because the plaintiff's intestate was at the time of the accident a trespasser or a licensee and on the evidence the plaintiff cannot recover.

"5. Because there is not sufficient evidence to justify a finding that the plaintiff's intestate was in the exercise of due care."

The motion was denied, and thereupon the defendant asked for the following rulings:

"1. On all the evidence the plaintiff's intestate was not invited to leave the train on the left-hand side, but was permitted to do so.

"2. The only inference the jury are justified in drawing from the evidence is that the plaintiff's intestate left the train on the left-hand side intending to walk along the railroad location for a considerable distance, and, therefore, he was a trespasser."

The rulings were refused. In answer to special questions submitted to them by the judge, the jury found that the plaintiff's intestate when he was on the train, which he had left just before he was killed, was a passenger; that he rightfully left the train on the left-hand side; that it was his custom to go home by the railroad location, but that what he intended to do on the evening of

the accident was beyond the power of the jury to decide; that at the time he was killed he was exercising reasonably intelligent and energetic attention to his own safety; that his death was caused by negligence of the engineer of the train which struck him, but not by a wilful and wanton act of the engineer, and that, assessed with reference to the degree of culpability of the engineer, $3,500 should be imposed upon the defendant as a penalty. The judge thereupon ordered a verdict for the plaintiff in the sum of $3,738.20 (being $3,500 and interest from the date of the writ). The defendant alleged exceptions.

*J. M. O'Donoghue,* (*F. N. Wier,* with him,) for the defendant.

*J. F. Warren,* for the plaintiff.

RUGG, C. J. The salient facts upon which this decision depends are that Edward Hamilton was a machinist in the employ of the defendant at its repair shops in Cambridge. He lived in Wilmington and travelled to and from his work on trains of the defendant on a free pass, which in terms exonerated the defendant from all liability for negligence of itself, its servants and agents, and stipulated that in case of personal injury to him the company should not be considered a common carrier or liable to him as such. Hamilton was killed in December, 1914, as he was alighting from the train of the defendant on which he had returned from his work to Wilmington, by a train passing on another track. It has been found by the jury that his death was caused by the negligence but not by the wilful or wanton act of the engineer of the train which struck him.

It was said in *Dugan* v. *Blue Hill Street Railway,* 193 Mass. 431, at page 434, "The rule on which the rights of the parties depend in such cases as that now before us . . . is this: Where a pass is issued as a gratuity the clause providing that the holder assumes all risk of accidents is binding. *Quimby* v. *Boston & Maine Railroad,* 150 Mass. 365. But where such a pass is issued to an employee as one of the terms of his employment the clause is not binding. *Doyle* v. *Fitchburg Railroad,* 166 Mass. 492." *Dickinson* v. *West End Street Railway,* 177 Mass. 365. The reason for this distinction is, as was stated in the Doyle case, that the ticket or pass is presumed to have formed a part of the consideration for which the employee enters and continues in the employ of the carrier and was not therefore a gratuity, and that it is contrary to

public policy to permit a railroad acting as a common carrier of passengers for pay to exonerate itself by contract from liability for all negligence of its servants. The first question is whether this still is the law of the Commonwealth.

Since that decision and those therein cited, there has been enacted St. 1913, c. 784, § 18, as amended by St. 1914, c. 679, § 1, whereby it is provided, "No common carrier shall, directly or indirectly, issue or give any . . . free tickets, free pass or free transportation for passengers . . . between points within this Commonwealth; but nothing in this act shall be held . . . to prohibit any common carrier from giving free or reduced rate service to its employees. . . . No common carrier shall, except as otherwise provided in this act, charge, demand, exact, receive, or collect a different rate . . . fare . . . toll or charge for any service rendered or furnished by it . . . from that applicable to such service as specified in its schedule filed with the commission and in effect at the time." St. 1913, c. 784, § 20, requires the filing of schedules of rates with the public service commission.

The argument is put forward that a change has been wrought by this statute rightly interpreted, and that such interpretation should be given because of the decision in *Charleston & Western Carolina Railway* v. *Thompson*, 234 U. S. 576. The question there presented related to the construction of the Hepburn Act of U. S. St. June 29, 1906, c. 3591, § 1, (34 U. S. Sts. at Large, 584,) which enacted that no common carrier should issue or give any "interstate . . . free pass . . . except to its employees." It was said on pages 577 and 578: "The main question is whether when the statute permits the issue of a 'free pass' to its employes and their families it means what it says. The railroad was under no obligation to issue the pass. It may be doubted whether it could have entered into one, for then the services would be the consideration for the duty and the pass and by § 6 it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that in its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. To most of those enumerated the free pass obviously would be gratuitous in the strictest sense, and when all that may receive them are grouped in a single exception we think it plain that the statute

contemplates the pass as gratuitous in the same sense to all."
That decision dealt with a statute which permitted on the one
side free passes and on the other reasonable rates. There was no
middle ground. The Massachusetts statute, however, permits
the employer to make free or reduced rates to its employees.
It allows diminished fares for their transportation as well as the
regular fare or free pass. The antithesis to which weight is given
in the federal decision does not exist in our statute. It does not
prohibit the giving of a pass as part consideration for the service
rendered by the employee. Our statute was enacted long after
the decision in the Doyle case. The relations between the common
carriers and their employees doubtless had become adjusted to
the principles in that decision declared. It would have been easy,
in the case at bar, if such had been the fact, to have made clear
by express stipulation in the pass itself that it was an entire gra-
tuity and did not form a part of the compensation for the work
done by the recipient. In the absence of some such agreement by
the parties, the presumption that it formed a part of the con-
sideration of the employment is stronger since the Doyle decision
than it was then. The statute manifests no purpose to change
the law as it had been theretofore declared to be. If no such
decisions had been made and the question now were presented for
the first time, different considerations might arise. But under
all the circumstances the Thompson case hardly can be regarded
as decisive.

It follows that the plaintiff was not bound by the stipulations
of his pass. This was decided in *Doyle* v. *Fitchburg Railroad*,
162 Mass. 66; *S. C.* 166 Mass. 492, where the reasons are set forth
at length.

There was evidence of long established practice for passengers
to alight from the train at this station on the side away from the
station and near the track where the train was, which struck the
deceased. That was sufficient basis under the circumstances, the
gate also being open on that side, to warrant the finding of an
invitation from the defendant to its passengers to leave the train on
that side. At the lowest the defendant owed the duty to refrain
from ordinary negligence to the plaintiff if he was in the exercise of
due care. There was sufficient evidence both of the due care of the
plaintiff and negligence of the defendant. *Glennen* v. *Boston Ele-*

*vated Railway,* 207 Mass. 497, 500.   *Letchworth* v. *Boston & Maine Railroad,* 220 Mass. 560.

The plaintiff at the time of the accident was not acting in the capacity of employee of the defendant.   His work for the day was ended and he was on his way home.   The plaintiff is therefore entitled to recover under St. 1906, c. 463, Part I, § 63, as amended by St. 1907, c. 392, and St. 1912, c. 354.

*Exceptions overruled.*