ANNA TORTORELLI & another *vs.* NEW YORK CENTRAL
RAILROAD COMPANY.

Worcester.    September 25, 1950. — December 12, 1950.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Agency,* Scope of authority or employment. *Contract,* Of employment. *Negligence,* Contractual limitation of liability, Assumption of risk. *Railroad,* Pass, Passenger.

In an action against a railroad for injuries sustained by one riding on a pass obtained from the railroad by a freight trucker employed in its freight house and originally hired by the foreman of the freight house, the evidence did not warrant a finding that it was within the scope of

the foreman's authority to hire the trucker or to fix the terms of his employment, and it was error to admit in evidence a statement made by the foreman to the trucker at the time of the hiring to the effect that the trucker would get passes in addition to his wages.

Evidence did not warrant a finding that a pass issued by a railroad to its employee was issued as one of the terms of his employment or that it was other than a gratuity; and "conditions" of the pass, to the effect that a user thereof "voluntarily" assumed "all risk of accidents" and that the railroad should not be liable for injury to his person or property, even though caused by the railroad's negligence, were binding and barred recovery against the railroad by one injured through its negligence while riding on the pass.

TORT. Writ in the Superior Court dated March 15, 1945. The action was tried before *Broadhurst*, J.

*J. A. Crotty*, for the defendant.

*Nicholas Fusaro & Nunziato Fusaro*, for the plaintiffs, submitted a brief.

WILKINS, J. The female plaintiff (hereinafter called the plaintiff) was negligently injured by the defendant while she was riding from Boston to Worcester on a gratuitous "trip pass" obtained by her husband who was a freight trucker employed by the defendant in Worcester. There is a count by the husband for consequential damages. There were verdicts for the plaintiffs. The defendant excepted to the admission of certain evidence and to parts of the charge, as well as to the denial of its motions for directed verdicts.

The pass was issued on March 23, 1944, to "Mr. Giulio Tortorelli & Wife" and was "good for one trip only until June 23, 1944," between Boston and Worcester. An important underlying question is the effect to be attributed to the "conditions" on the back of the pass purporting to exonerate the defendant from liability for negligence. These conditions read in part as follows: "In consideration of receiving this free pass, each of the persons named thereon, using the same, voluntarily assumes all risk of accidents and expressly agrees that the Company shall not be liable under any circumstances, whether of negligence of itself, its agents, or otherwise, for any injury to his or her person, or for any loss or injury to his or her property; and that, as for him or her, in the use of this pass, he or she will not

consider the Company as a common carrier, or liable to him or her as such." The distinction is between a pass issued as a gratuity, in which case the conditions are binding, and one issued as one of the terms of the employment, in which case they are not binding. *Quimby* v. *Boston & Maine Railroad*, 150 Mass. 365. *Doyle* v. *Fitchburg Railroad*, 162 Mass. 66; *S. C.* 166 Mass. 492. *Dugan* v. *Blue Hill Street Railway*, 193 Mass. 431, 434. *Palmer* v. *Boston & Maine Railroad*, 227 Mass. 493, 495.

The plaintiff's husband testified that on March 5, 1942, he went to the defendant's freight house in Worcester and talked with one Secord, a foreman, who hired him. At that time he was unmarried and there was no talk about a pass for his wife. After he had been working for three months he obtained a pass. The accident was on April 9, 1944, and down to that time the husband had received in all ten or twelve passes from Secord, under whom he worked. All the passes were for him and his wife for rides between Boston and Worcester.

The following testimony of the husband was admitted subject to the defendant's exception. When he was hired on March 5, 1942, Secord told him he would receive a stated sum an hour and also said, "You get a free pass every three months, and after ten years, you get a regular pass like everybody else has got." The husband said, "I'll take it." He was married in 1943 and after that he talked with Secord about passes for both himself and his wife. Every time he got a free pass he had to ask for it and tell why he wanted it.

During the cross-examination of the husband, a death certificate of the city clerk department of Worcester was admitted in evidence. This gave the date of Secord's death as July 29, 1942.

One Oldroyd, an assistant to the general manager of the defendant, testified that he did not think that in 1942 the foreman in the Worcester freight house had the right to hire employees and that he knew that the foreman did not have the right to fix the terms of employment at that time;

that one Boardman, since deceased, was known as the freight agent and was in charge of both the freight office and the freight house; that he had charge of personnel; that under him there was a foreman of the freight house, and under the foreman were gangs consisting of truckers and receiving and delivery clerks, who checked the freight in and out of the cars; that the duties of the foreman were keeping the freight moving, loading and unloading the cars, placing the freight in the house, and being in charge of the men; that Boardman had complete control in 1942, and could delegate his duties to the foreman; that the basis for issuing passes was the fact that a man was an employee; that after an employee had worked three or six months he would not be entitled to a trip pass but would be granted one on request; that after an employee had been in the service ten years he would have the privilege of obtaining passes, which would also include his wife and dependent members of his family; and that this practice has been in existence, to the knowledge of the witness, for forty-seven years.

There was no evidence that Secord ever hired any other employee; or that Boardman ever delegated to Secord any authority to hire any employee; or that any officer or agent whose knowledge would be binding upon the defendant knew of the conversation which the husband testified he had with Secord. All the evidence relating to the scope and nature of Secord's duties is substantially outlined above. It is barren of any suggestion that it was incidental or reasonably necessary to the performance of Secord's duties as foreman to hire the husband or to fix the terms of his employment. The mere fact that Secord was a foreman gave him no such authority. *Langston* v. *Postal Telegraph-Cable Co.* 6 Ga. App. 833. *Bonnell* v. *State,* 64 Ind. 498, 504. Mechem, Agency (2d ed.) § 1041. See *Montgomery Ward & Co.* v. *Arbogast,* 53 Wyo. 275, 288.

We think that there was error in the admission in evidence of the husband's testimony to which exception was taken and in leaving it to the jury to say whether the pass was issued as one of the terms of the employment. See

*James F. Monaghan Inc.* v. *M. Lowenstein & Sons Inc.* 290
Mass. 331, 333; *Hurley* v. *Ornsteen*, 311 Mass. 477, 482;
*Braden* v. *Trustees of Phillips Academy*, 321 Mass. 53, 55;
*Tower* v. *W. C. Plunkett & Sons Co. Inc.* 321 Mass. 663;
Restatement: Agency, § 35, comments a, b. The denial
of the motions for directed verdicts also was error.

*Exceptions sustained.*
*Judgment for the defendant.*